# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-20 38th Avenue, Suite 10G
Flushing, New York 11354

March 10, 2022

Shan Zhu, Esq.
Tel : (718) 353-8588
Fax: (718) 353-6288
Email: szhu@hanglaw.com

**VIA ECF**
Hon. Gary R. Brown
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    Chen v. LJC Trading New York, Inc. et al,
               Case No. 2:19-cv-03276-GRB-ST
               *Letter Motion for Settlement Approval*

Dear Judge Brown:

      Plaintiff, Kuanyu Chen ("Plaintiff Chen"), and Defendants LJC Trading New York, Inc., Zhong Zhang, Lihui Zhang, Jianchen Liu and LJC Trading, Inc. (collectively, the "Defendants") respectfully request that the Court approve the settlement agreement reached in this matter. A copy of the executed settlement agreement is annexed herein as **Exhibit A**.

## Settlement Amount

      Both parties believe that the settlement amount is fair and reasonable. This action was brought by Plaintiff Kuanyu Chen for, among other things, alleged minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 et seq., and the New York Labor Law ("NYLL").

      Plaintiff Chen alleges that from May 2015 to May 2016, Plaintiff Kuanyu Chen was hired by Defendant, Sino-Global Shipping to work as a driver from May 2015 to December 2015, Plaintiff worked 7 hours each day; and therefore, worked at least 35 hours a week. Occasionally, Plaintiff would be asked to pick up suppliers or clients from JFK/LGA/Newark Airport. From December 2015 to May 2016, Plaintiff worked 10 hours each day from Monday to Friday, 11 hours on Saturday, and 10 hours on Sunday. Therefore, Plaintiff worked seventy-one (71) hours a week, for Zhong Zhang and his family. During this period, Plaintiff remained as an employee of Sino-Global Shipping and was paid by Sino-Global Shipping, while Zhong Zhang, Lihui

Zhang, and Jianchen Liu started supervision and control of Plaintiff's work schedule. From May 2015 to May 2016, Plaintiff's annual salary was $40,000, paid by Sino- Global Shipping with monthly check.

Plaintiff Chen further claimed, from May 2016 to February 28, 2019, Plaintiff is officially employed by LJC Trading, a family business owned by Zhong Zhang and his family.

Plaintiff continued to drive for Zhong Zhang and his family on the same work schedule as he did from December 2015 to May 2016, as stated above. However, Plaintiff was given a "sales manager" title by Zhong Zhang. Plaintiff has never done any management work. Plaintiff's fixed annual salary was determined to be $60,000, beginning in May 2016. LJC Trading paid Plaintiff with monthly checks, until August 2018.

Defendants and Plaintiff had an agreement that, Plaintiff would pay for gases and other tools of trade expenses related to his driving work for Defendants and get reimbursement for those expenses later from Defendants. however, Plaintiff never received those reimbursement for the period from in or around March 2018 to July 2018.

In or around March 2018, Defendants traveled to California and Plaintiff worked as driver in that trip. Defendants asked Plaintiff to rent a car and pay for other expenses and promised to reimburse him after the trip. However, Defendants, as stated above, did not receive reimbursement for those tools of trade expenses. Plaintiff's unreimbursed tools of trade expenses for the period from in or around March 2018 to July 2018, including the expenses he paid for Defendants' trip to California, is in total approximately $6,000.

Plaintiff claims that from September 2018, LJC stopped their monthly salary payment, except for October 2018 and January 2019. However, Plaintiff continues to work for Zhong Zhang and his family. In October 2018, Plaintiff received a monthly salary check, and then in January 2019, Plaintiff received another one.

Additionally, Plaintiff claims he did not receive the written at-hire notice, and written paystubs mandated by the New York Labor Law.

If Plaintiff were to prevail on all of his claims, including minimum wages, overtime, and statutory damages for violations of Wage Theft Prevention Act, exclusive of attorney's fees, costs, and prejudgment interest, he would be entitled to recovery totaling approximately $661,470.57. A copy of the damage calculation is annexed herein as **Exhibit B**. Plaintiff is confident that he will be able to prove his allegations through witness testimonies and documentary evidence.

On the other hand, Defendants deny all of Plaintiff's allegations. Defendants contest Plaintiff's working hours and maintain that Plaintiff was paid for all hours worked.

If Defendants were to prevail on all of their defenses, the amount of damages owed to Plaintiff would be $0. Significantly, if the case were to go to trial, Defendants argue that they would be able to demonstrate via documentary evidence and witness testimony that Plaintiff worked fewer hours than alleged and were properly paid compensation.

The gross settlement amount between Plaintiff, Kuanyu Chen ("Plaintiff Chen"), and Defendants LJC Trading New York, Inc., Zhong Zhang, Lihui Zhang, Jianchen Liu and LJC Trading, Inc. is $50,000.00, inclusive of Plaintiff's counsel's attorney's fees and costs of $16,666.67; and distribution to Plaintiff in the amount of $33,33.33. This reflects a reasonable compromise between the parties' dispute over Defendants' alleged wage and hour violations, and this amount considers the costs and uncertainty of protracted litigation. This settlement was reached after extensive negotiations between the parties' respective attorneys. We believe this to be a fair resolution of this matter, due to certain bona fide disputes about the value of Plaintiff's claims and the risks attendant with continuing the litigation.

Moreover, Plaintiff was incentivized to settle because, while parties are at very early stage of the litigation, resolution may take substantial amount of time. Should Plaintiff insists on further litigating this matter, the value of his damages would decrease not only due to ordinary litigation risks, but also simply with the passage of time, and the likelihood that any recovery would only be paid out over a significant length of time. By settling now, Plaintiff ensure that he will get much of what he could potentially recover substantially upfront, and he does so without having to face the possibility that his claims may be undermined at trial.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.)

Here, the settlement amount represents a fair recovery considering that Plaintiff's potential recovery ranges from $0 to $661,470.57. The settlement reflects a fair and reasonable compromise of disputed issues rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema* 60, LLC, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citations omitted). The settlement was reached after judicial intervention and litigation in this District. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Hon. Gary R. Brown
Page 4

In addition, the parties face substantial litigation risks. The costs associated with discovery and jury trial weigh in favor of settlement approval. Here, parties have been able to resolve the matter before engaging into discovery. In light of the uncertainties associated with establishing liability, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable. Cf., e.g., *Beckert v. Ronirubinov*, 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding that a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation);*Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (holding that the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation").

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. See, e.g., *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). Here, counsel for both parties are experienced litigators. The Hang & Associates PLLC practices primarily on employment law issues. Parties exchanged multiple demands and offers of settlement before settling on the terms of this proposed settlement. Moreover, prior to entering into the settlement agreement, Plaintiff has thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Lastly, factors that weigh against settlement approval are absent in this case. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiff is no longer employed by Defendants so there is no likelihood that Plaintiff's circumstances will recur. Additionally, this case presents no novel questions of law that would benefit future litigants from a mature record.

### **Attorney's Fees**

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiff, the Firm will retain 1/3 of the Settlement Amount as attorneys' fees, which is $16,666.67. Previously Plaintiff settled partially with Defendants Sino-Global Shipping America, Ltd., Sino-Global Shipping New York, Inc., and Lei Cao via Rule 68 offer of Judgment for an amount of $75,000. ECF Dkt. No. 109. H&A has taken $26,066.03 as its attorneys fee[1] (including costs process of service of $551.00, Mailing fees of $15.05, FedEx shipping fee of $33.00 and Federal Court filing fee $400). As such, the total attorneys fee collected by H&A is $42,732.70. The total amount recovered by Plaintiff is $82,267.30

---

[1] $26,066.03 = ($75,000-$999.05)/3+$999.05

Based on previous experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. See, e.g., *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in Cheeks, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (citing *Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (S.D.N.Y. 2015). Therefore, as one-third is standard practice in FLSA claims, it is a fair number for this matter as well.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id*. at 206. This Agreement contains no such red flags. Moreover, since the Cheeks decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensate plaintiff's attorneys in FLSA settlements. See *Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); see also *Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino 's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Therefore, the attorney's fees requested are reasonable under the circumstances. *Cf. Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 U.S. Dist. LEXIS 75928, at *5 (E.D.N.Y. May 3, 2018) (holding attorney's fees request totaling 38% of the settlement fund reasonable because the attorney's fees requested "fall below the lodestar amount").

In addition, Plaintiff's request for attorney's fees is reasonable because it is supported by a "cross-check" using the lodestar method. See *Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 50 (2d Cir. 2000) (encouraging the practice "of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage"); *see* also *In re Citigroup Inc. Sec. Litig*., 965 F. Supp. 2d 369, 373-74 (S.D.N.Y. 2013) (applying the lodestar "cross-check" to assess the reasonableness of fees calculated using the percentage method). Here, Plaintiff's counsel spent approximately 280.40 hours in this matter. Attached hereto as **Exhibit C** is a copy of the time

record maintained by this Firm. Were Plaintiff billed hourly, the attorney's fees would amount to $83,879.05

The hourly rate of $300 requested by the undersigned attorney is reasonable. I have substantial experience in litigation FLSA matters and other complex commercial litigations. I received my Juris Doctor degree from Case Western Reserve University School of Law in January 2018. This is my third year practicing in the field of FLSA.

Mr. Ge Qu, Esq. has substantial experience litigating FLSA matters from pleading to trial representing both employees and employers. In addition to FLSA cases, He has litigated employment matters arising under Title VII, Family Medical Leave Act, and Equal Pay Act. He dedicated the majority of his time to FLSA matters including more than 20 cases in this District alone. In addition, he represents employees as well as employers before federal and state agencies such as the National Labor Relations Board, Equal Employment Opportunity Commission, and New York State Human Rights Division. For instance, he has successfully represented an employer from a retaliation charge filed with NLRB in connection, resulting in dismissal. He also represents commercial tenants in actions arising under Title III of the American with Disabilities Act. Hang Law has routinely billed his service to clients, including FLSA matters, at $300 per hour. He received a Juris Doctor degree from Fordham University School of Law in 2015; and an advanced LLM in Law & Entrepreneurship degree from Duke University School of Law. Hang Law has billed her service to clients at $300 per hour.

Ms. Jiajing Fan, Esq., a former associate at H&A, has been practicing in employment and labor laws since September 2018. She received LLM-Legal Institutions Degree from the University of Wisconsin Madison Law School in 2016. Before she joined Hang & Associates, she had litigation assistance experience in housing laws litigations in Legal Actions of Wisconsin from December 2017 to May 2018. Since September 2018, she has had substantial experience litigating FLSA matters from pleading to trial representing both employees and employers. She has dedicated the majority of her time to FLSA matters. Hang Law has billed her service to clients at $300 per hour.

Ms. Yuezhu Liu, Esq., has been practicing in employment and labor laws since January 2020 and has been practicing in China generally since September 2013. She received a juris doctor Degree from the University of Maryland Law School in 2019. Before she joined Hang & Associates, she has litigation experience in commercial litigations in a boutique law firm located in Baltimore, Maryland from May 2019 to December 2019. Before 2016 when she was admitted into Maryland Law School, she practiced in a boutique litigation firm in China from 2013 to 2016 as a full-time litigation associate. During law school, she practiced in the same firm in China as a part-time litigation associate. Since January 2020, she has had substantial experience litigating FLSA matters from pleading to trial representing employees. she has dedicated the majority of her time to FLSA matters. Hang Law has routinely billed her service to clients since January 2020, at $300 per hour.

Ms. Zhangyuxi Wang, Esq. is an associate at Hang & Associates, and she is admitted in New York State and California State. Ms. Wang's litigation experience focused on New York and

employment disputes arising under the Fair Labor Standards Act (the "FLSA"), and New York Labor Law (the "NYLL"), including litigation of wage and hour, discrimination, and retaliation claims before state and federal courts. Ms. Wang is also experienced in immigration and civil litigation. Hang Law has billed her service at $300 per hour.

Ms, Qingyu Fan Esq., an associate attorney on this case, has experience in employment, corporate, and real estate law. Ms. Fan is admitted in both New York and New Jersey and is specialized in both plaintiff and defendant sides. She independently handles a caseload of more than 25 cases which includes client intake, discovery, depositions, motion practice, settlement, and possible trial, and bills an hourly rate of $300 per hour

Ms. Ziyi Gao is a bilingual law clerk at Hang & Associates. Her litigation experience focuses on employment disputes arising under the Fair Labor Standards Act (the "FLSA") and New York Labor Law (the "NYLL"). With excellent skills in legal researching and legal writing, Ms. Gao is often trusted with supporting the team in document drafting and preparation, court filings, translation, and other clerical functions. Ms. Gao is also meticulous and well-organized. Ms. Gao receives her J.D. degree from Touro College Jacob D. Fuchsberg Law Center with the honor of Magna Cum Laude. Hang Law has billed her service at $275 per hour.

Ms. Maritza Yanes worked as a paralegal in H&A. Maritza Yanes joined H&A in March 2020 before the Pandemic. Maritza in this matter specifically facilities the communication between the undersigned and Plaintiffs. This firm currently bills her hour at $150.

Ms. Ge Yan worked as a law clerk in H&A and had experiences in doing intake, background research, conducting legal research, conducting translation, and drafting internal memos. Ms. Yan received her LL.M. Degree from the Washington University School of Law in 2019 and joined Hang & Associates the same year. Up to now, Ms. Yan has passed the Chinese National Bar Exam. As a Chinese speaker, Ms. Yan facilitates communication between clients and the attorneys in the law firm. She currently has an hourly bill of $175. In the year of 2021, She has an hourly bill of $150.

Therefore, the attorney's fees requested are reasonable under the circumstances. *Cf. Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 U.S. Dist. LEXIS 75928, at *5 (E.D.N.Y. May 3, 2018) (holding attorney's fees request totaling 38% of the settlement fund reasonable because the attorney's fees requested "fall below the lodestar amount").

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its courtesy and continued attention to this matter.

Respectfully,

Hon. Gary R. Brown<br>Page 8

   *s/ Shan Zhu*
   Shan Zhu, Esq.